UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 07-20192-CIV COOKE/BROWN

BUENA VISTA EAST HISTORIC
NEIGHBORHOOD ASSOCIATION,
WENDY STEPHAN, NINA WEST,
ANNETTE RICHTER, JANE HERRERA,

    *Plaintiffs*,

v.

CITY OF MIAMI, a Florida municipal
corporation and ANA GELABERT-
SANCHEZ individually and in her official
capacity,

    *Defendants*.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before me on Defendant's December 20, 2007, Motion for Summary Judgment [DE 38]. On March 25, 2008 I heard argument from both parties addressing the issues of standing, mootness, failure to join indispensable parties, Defendant Gelabert-Sanchez's potential immunities and the alleged redundancy of her inclusion as a defendant, among others. For the reasons set forth below, Defendant's Motion for Summary Judgment [DE 38] is granted.

**I.       Background**

Plaintiffs Buena Vista East Historic Neighborhood Association ("Buena Vista"), Wendy Stephan, Nina West, Annette Richter, and Jane Herrera (together, "Plaintiffs") initially brought suit in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida. Pursuant to 28 U.S.C. §1441 *et seq.*, Defendants City of Miami and Ana Gelabert-Sanchez ("Defendants") removed the case to Federal Court.

Plaintiffs sued the City of Miami and its Director of Planning for violation of 42 U.S.C. §1983, and for Declaratory and Injunctive relief, alleging that Defendants, by not notifying Plaintiffs of the approval of Class II Special Permits for two proposed construction projects, deprived Plaintiffs of their due process rights of notice and an opportunity to be heard.  The two projects at issue in this case are the Gallery Project and Tiziano Project.  The Gallery Project was never within, nor abutting to, the Buena Vista East Historic District, and in any case, has since been withdrawn by the developer.  The Tiziano Project abuts the Buena Vista East Historic District, but nothing has been built on the site and the Class II Special Permit will expire on May 19, 2008.

Buena Vista was formed to help maintain the character of the Buena Vista East Historic District, an area bounded generally by N.E. 2nd Ave. to the East, N. Miami Ave. to the West, N.E. 48th Street to the North, and N.E. 42nd Street to the South.  Buena Vista attempts to protect the area and its residents is by keeping tabs on new building and construction projects that they feel may affect the area, and when they feel it is warranted, opposing such projects or appealing the issuance of permits.  As evidenced in the briefs and at oral argument, Plaintiffs have, on prior occasions, appealed the issuance of Class II Special Permits.

What makes this situation different, according to Plaintiffs, is that they were not notified of the approval of the permits for the Gallery and Tiziano Projects, and because of the lack of notice, the time to appeal lapsed and Plaintiffs thereby lost their right to appeal.  This notice issue is the heart of Plaintiffs' claim.  They argue that the Defendants *should be* required to notify registered neighborhood or homeowners associations of the approval of Class II Special Permits. Because of the failure to notify, Plaintiffs claim that this Court should void the permits already issued, enjoin any action on the two projects, and enjoin the City Planning Director from issuing

any further Class II Special Permits without providing proper notice of the approval to registered associations and abutting homeowners. The parties are in agreement that the relevant ordinances authorize the Planning Director to grant Class II Special Permits, allow for the appeal of such permits to the Zoning Board within fifteen days of the date of the final decision, but do not require the Defendants to provide notice of that decision to Plaintiffs.

Defendants filed a Motion for Summary Judgment arguing: (1) the Plaintiffs lack standing to challenge the permits at issue; (2) the case is moot because one project has been withdrawn and both permits are set to expire shortly without any construction having commenced; (3) the issuance of the permits complied with due process requirements; (4) Plaintiffs failed to join indispensable parties; and, (5) that City Planning Director, Ana Gelabert-Sanchez, is entitled to qualified-immunity in her official capacity, quasi-judicial immunity in her personal capacity, and that inclusion of the official capacity claim is redundant because her employer, the City of Miami, is already a named Defendant.[1] A Response and Reply were timely filed as well as the Court-ordered supplemental briefs addressing standing, construction of the ordinances, injury, and Defendants' practices and procedures regarding notice of permit approval.

## II.    Legal Standard

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will

---

[1]The Court considers Defendants' first Motion for Partial Summary Judgment to be incorporated into its later Motion for Summary Judgment. *See* DE 59. Additionally, the withdrawal of the Gallery Project occurred after the Motion for Summary Judgment was filed, but was raised appropriately at oral argument.

preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.  Analysis

In essence, Plaintiffs ask this Court to *write in to* the zoning ordinances a requirement not even implicit in the statutory language, namely that the City or Director of Planning is required to provide notice of Class II Special Permit approvals to certain homeowners or neighborhood associations. The Court cannot reach this issue, however, because the Plaintiffs' claims are moot, and even if they were not, Plaintiffs lack standing to challenge the issuance of these Class II Special Permits.

#### A.  Mootness[2]

Plaintiffs argue that the Defendants violated Plaintiffs' due process rights to notice and an opportunity to be heard to appeal the issuance of the Class II Special Permits for the Gallery and Tiziano Projects. The Gallery Project has been withdrawn, eliminating the required case or controversy over the Class II Special Permit for that project. *See BankWest, Inc. v. Baker*, 446 F.3d 1358, 1363 (11th Cir. 2006) ("The rule that federal courts may not decide cases that

---

[2] Defendants' "Suggestion of Mootness" [DE 52] verges on being a third motion for summary judgment. As such, the notice skirts the line of being an inappropriate filing where two motions for summary judgment had previously been filed and responded to, and where this Court had ordered supplemental briefing on particular issues raised in those motions and respective responses, mootness not being one of them. As Plaintiff states, it appears this filing is an attempt by Defendants' to "take another bite at the apple." The Court understands that Defendants have a duty of candor to disclose new factual developments, but the Suggestion of Mootness filed went well beyond notifying the Court that the Gallery Project had been withdrawn. Because mootness was argued in the initial motion for summary judgment, and again at oral argument, this Court will not address any arguments raised only in the Suggestion of Mootness.

have become moot derives from Article III's case and controversy requirement. [A]n action that is moot cannot be characterized as an active case or controversy. The case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.") (internal quotation marks and citations omitted). The Tiziano Project has not been officially withdrawn, however, to the Court's knowledge no construction activity has taken place on the site or is planned. The Class II Special Permit for the Tiziano Project expires May 19, 2008. Defendant has persuasively argued that the time remaining before expiration of the permit is insufficient to allow the Tiziano Project to go forward, obtain the necessary building funds, reviews and approvals, and commence (if not complete) construction. Plaintiff has not offered sufficient evidence to rebut this argument or to show that there is a genuine issue of material fact as to whether the Tiziano Project will commence construction.

> The Court recognizes Plaintiffs' argument that this is a situation "capable of repetition, yet evading review," and therefore an exception to the mootness doctrine. *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1120 (11th Cir. 1995) ("This exception allows a court to reach the merits of a case which is otherwise moot if (1) there is a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party, and (2) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." ) (quoting *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1507 (11th Cir.1991)) (internal quotations marks omitted). However, this Case does not fit under the exception. First, Plaintiffs, beyond mentioning the exception and citing a case not at all factually related to this one, put forth no argument to support why there is a reasonable expectation that the same controversy will recur involving the same Plaintiffs. Second, the only reason the Court finds this Case moot is because the projects are not going forward. If they were going forward,

an entirely different situation would exist, likely changing drastically the Court's analysis. These reasons alone are sufficient to foreclose application of the exception.

**B.    Standing**

Even if this case were not moot, Plaintiffs lack standing to challenge the Class II Special Permits at issue. Defendants and Plaintiffs take a different tack in approaching the standing issue. Defendants argue that in order to have standing, Buena Vista and the individual Plaintiffs are required to show that they have suffered a special injury different in kind and degree from a generalized harm. Plaintiffs initially argue that they have standing to challenge the zoning decision on grounds of procedural irregularity. In addition, they argue that they have a legally protected property interest in preserving the character of the neighborhood, as well as a property interest created by the right of appeal, which gives them standing. The only "injuries in fact" ever alleged by Plaintiffs are the alleged violation of procedural due process stemming from the loss of the ability to appeal, and a list of conjectural and speculative injuries.[3]

---

[3] *See* Plaintiffs' Brief As Per Court Order of February 6th, 2008:
> The individually named Plaintiffs and the Buena Vista East Historic Neighborhood Association, as an association made up of property owners of homes similarly situated, would sustain the following damage if Gallery and Tiziano were built: 1) Loss of property value; 2) Loss of contextual consistency in low-scale neighborhood; 3) Injury of damaging precedent of large-scale buildings where none currently exist; 4) Increased traffic and neighborhood congestion; 5) Noise from future high-rise residents' activities, including parties and sleep disturbance; 6) Overflow parking from residents and their guests infringing upon Buena Vista East's existing limited parking; 7) Aesthetic intrusion in a historic neighborhood altering the historic character of Buena Vista; 8) Interrupting the historic relationship between Buena Vista East Historic Neighborhood Association and the Buena Vista commercial district, a.k.a. the "Design District"; 9) Loss of tree cover at project site; 10) Light pollution from the parking garage and condominium tower; 11) Increased traffic congestion at a critical and dangerous intersection and I-195 on-ramp; 12)

Plaintiffs appear to have misunderstood, or at least misapplied, the argument that representative associations have standing to challenge zoning decisions on grounds of procedural irregularities. The case relied on by Plaintiffs for this proposition, *Peacock v. City of Miami*, 646 So.2d 291 (1994) (*per curiam*), entirely fails to support their argument. Plaintiffs state that "[p]rocedural irregularity is an attack on the ground that the decision is void or invalid by reason of departure from any essential procedure preceding its enactment, in essence an attach [*sic*] on how the resolution was enacted, but not what was enacted, including that required notice was not given." *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment, DE 39, citing *Save Brickell Avenue, Inc. v. City of Miami and Santa Maria Dev. Group*, 395 So.2d 246 (1981). What Plaintiffs fail to recognize is that both *Peacock* and *Save Brickell* refer to the initial enactment of the zoning ordinance, *not* the approval or issuance of a special permit. The "required notice [that] was not given" has nothing to do with notice of approval for a special permit, but instead concerns adoption of the ordinance itself without proper notice of a public hearing, in violation of Florida statute. *See Knowles v. Town of Kenneth City*, 247 So.2d 748 (1971) (finding mandamus did not lie to compel the issuance of building permits where the zoning ordinance in question was enacted without the statutorily required notices being published prior to public hearing and adoption); *Save Brickell Ave., Inc. v. City of Miami*, 393 So.2d 1197, 1198

---

> Increased traffic along North Miami Avenue, NE 1st Avenue, NW 1st Ave and NE 2nd Avenue causing increased delays to residents, increase of danger to homes, and delays in emergency response time; 13) Increased cycling of traffic through residential area, leading to loss of safety to pedestrians and children; 14) Increased air pollution from increased traffic, especially idling traffic; 15) Increased difficulty in retaining tenants in residential neighborhood during construction periods: 16) Loss of privacy 17) Shadow and blocking of southern exposure over homes and gardens, loss of ability to grow various plants; 18) Long period of construction noise; 19) Falling construction debris.

(1981) ("As a corporation purportedly devoted to safeguarding the zoning of the area, Save Brickell Avenue is an 'affected ... citizen' which has standing to attack the enactment in question on the ground, which was asserted below, that it is void or invalid because the 'required notice was not given.'") (citing *Renard v. Dade County,* 261 So.2d 832, 838 (1972) ("[T]he question certified deals with standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given.") (citing *Knowles*, 247 So.2d 748)). Because Plaintiffs do not challenge the ordinance or its enactment, they do not have standing on "procedural irregularity" grounds.

Plaintiffs' arguments that they have a legally protected property interest in the preservation of the character of their property interests, and therefore standing, also fails. First, the cases relied upon by Plaintiffs involve re-zoning actions that prompted due process protections. *See, e.g.*, City *of Miami v. Zorovich,* 195 So.2d 31 (1967) (zoning classification); *Everett v. City of Tallahassee*, 840 F.Supp. 1528 (N.D.Fla.1992) (denial of plaintiff landowner's re-zoning petition). The issue here involves the discretionary decision of the City Planning Director to issue a Class II Special Permit, which is not a change in zoning or a zoning variance. Even if the cases cited were applicable, Florida law states:

> it is no longer questioned that a municipality, acting under legislative authority, may be vested with the power to enact a valid zoning ordinance and that a general attack thereon will ordinarily fail; nor is it questioned that the right of an urban owner to the free use of his property may be regulated by a legitimate exercise of the police power, and when so asserted, fairly and impartially in the interest of the public health, safety, morals or general welfare, the courts will not substitute their judgment for that of the public officials duly authorized in the premises unless it clearly appears that their action has no just foundation in reason and necessity. On the other hand, if the application of the zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all uses or the only use, to which it is

> reasonably adapted, an attack upon the validity of the regulation as applied to the particular property involved, will be sustained.

*Forde v. City of Miami Beach*, 1 So.2d 642, 645 (1941) (citations omitted). A simple review of Plaintiffs' list of claimed potential damages, *see note 4, supra*, reveals that Plaintiffs do not even allege that the two projects, let alone the issuance of the Class II Special Permits, would deprive them of the beneficial use of their respective properties by precluding all uses or the only use, to which they are adapted. Accordingly, Plaintiffs do not have standing based on preservation of the character of their respective properties or the neighborhood.

Having no standing based on procedural irregularity or preservation of character, Plaintiffs remaining basis for standing is a showing that they have suffered a special injury in fact, different in kind from a generalized harm suffered by the general public. In *Lujan v. Defenders of Wildlife* the Supreme Court stated:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560-61 (internal citations and quotations marks omitted). Further, representative associations and individual plaintiffs, to establish standing to challenge an action such as the one *sub judice*, are required to show that they have suffered special injury or damage, different from that suffered by the general public. *See Soap Corp. of Am. v. Reynolds*, 178 F.2d 503, 506 (5th Cir. 1949) ("As a general rule, an individual can neither abate, nor recover damages for, a public

nuisance, unless he can show that he has sustained therefrom damage of a special character, distinct and different from the injuries suffered by the public generally, that is, a private individual to sue must have sustained a special injury[.]"); *Renard v. Dade County*, 261 So.2d 832, 835 (1972) (A plaintiff "must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole. The 'special damage' rule . . . is an outgrowth of the law of public nuisance.") (internal quotation marks, footnotes, and emphasis omitted); *Chabeau v. Dade County*, 385 So.2d 129, 120 (1980) (representative associations held to the same requirements).

   Here, the Court need only examine whether there is an injury in fact, and if so, whether that injury constitutes a special injury. Plaintiffs have listed nineteen damages which they classify as "threat[s]" to their concrete interests. All of the nineteen damages are speculative or conjectural. For example, Plaintiffs claim loss of property value, "injury of damaging precedent of large-scale buildings where none currently exist, noise from future parties, aesthetic intrusion, increased traffic congestion "causing delays to residents, increase of danger to homes, and delays in emergency response time," increased air pollution, loss of privacy, and falling construction debris, along with eleven other potential injuries. Plaintiffs have not alleged any actual damages from the approval of the Class II Special Permits for the Gallery and Tiziano Projects, or from the loss of ability to appeal those approvals. Even if Plaintiffs had alleged that some or all of these injuries were actual or imminent, Plaintiffs have presented no evidence of how these injuries to Buena Vista or the individual Plaintiffs would be different in kind from those suffered by the community as a whole. In sum, Plaintiffs have not shown injury in fact, and certainly not special injury.

   Plaintiffs' argument that they have a property interest in their right to appeal, and that the

loss of the ability to appeal is an injury, lacks merit. Plaintiffs cannot be heard to argue that they had a property interest in a right of appeal that they were unable to use because an ordinance they have not challenged did not require notice to them of approval of special permits which they cannot assert caused or will cause special injury. Assuming, *arguendo*, that Plaintiffs have a property interest conferred by the right of appeal, Plaintiffs' challenge to the loss of that property interest should be against the ordinance. They argue instead that, because there is no notice requirement in the statute, the right to appeal is nullified. Defendants' actions, while arguably amiss, conform with the zoning ordinances. Plaintiffs' argument that the Defendants could in the future fail to notify Buena Vista of approval of a Class II Special Permit, and that Plaintiffs would again lose their right to appeal, is a substantive due process argument that the *ordinance* violates due process, not that Defendants' actions did so. The ordinance sets out the right to appeal and the appeal process, and if Plaintiffs believe this process does not meet the Constitutional minimums for notice and an opportunity to be heard, Plaintiff can seek to invalidate or reform the ordinance. What Plaintiffs cannot do is try to circuitously or tangentially attack the ordinance by attacking its result.

### IV.     Conclusion

Because the Court finds that this Case is moot, and even if it were not, Plaintiffs lack standing to challenge the Class II Special Permits at issue, there is no need to reach the issues of Defendant Ana Gelabert-Sanchez's immunity or the propriety of her being a Defendant, nor is there a need to address Defendants' arguments regarding the failure to join indispensable parties. The question of whether Defendants' violated Plaintiffs' due process rights by not giving them notice of the approval has been discussed above, and it is clear to this Court that Plaintiffs' action, if one exists, is a challenge to the Constitutionality of the zoning ordinance, a challenge not

brought here by Plaintiffs.[4]

Accordingly, it is hereby **ORDERED and ADJUDGED**:

(1) that Defendant's Motion for Summary Judgment [DE 38] is **GRANTED**;

(2) all pending motions are **DENIED** *as moot*;

(3) the Clerk shall **CLOSE** this case.

**DONE and ORDERED** in chambers, Miami, Florida, this 22nd day of April 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Stephen T. Brown*
*The Hon. Ted E. Bandstra*
*Counsel of Record*

---

[4] I note, however, that there is evidence that the Defendants' practices do not conform with the ordinances as-written, in that the City does notify some registered associations some of the time. There does not appear to be a consistent notification process. Because of the confusion and controversy this practice can cause, Defendants should strive to reform their practice.